UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALISHIA PIERRE-LOUIS,

*Plaintiff*,

v.

ERICK CLARCK; TASHI PALJOR; THE CITY
OF NEW YORK,

*Defendants.*

**COMPLAINT**

Case No. _____

JURY TRIAL DEMANDED

## INTRODUCTION

1.      On the night of September 30, 2022, Ms. Alishia Pierre-Louis was unlawfully arrested and detained by Defendants Erick Clarck and Tashi Paljor in the parking lot of the Frederick Douglass Houses, the housing development where Ms. Pierre-Louis lived.  Ms. Pierre-Louis recognized Defendant Clarck as an NYPD officer against whom she had filed multiple complaints.

2.      On September 30, Defendants Clarck and Paljor approached Ms. Pierre-Louis and a group of her family and friends.  Without any factual or legal basis, Defendant Clarck accused Ms. Pierre-Louis of having alcohol in her cup and demanded to see her identification.  Defendants Clarck and Paljor then proceeded to unlawfully arrest and detain her overnight, while also handcuffing her in a manner that exacerbated a preexisting shoulder injury.  To justify their egregiously unlawful conduct, Defendant Clarck provided prosecutors with false description of the events, including that Defendant Clarck had witnessed Ms. Pierre-Louis drinking alcohol, and that she "flailed her arms" and "made it difficult" to handcuff her, supposedly causing injuries to

Defendant Clarck.

3.      Each of these claims was demonstrably false.  Fortunately, the entire arrest was captured on video by several cell phones, which unequivocally confirm the falsity of Defendant Clarck's claims: the Defendants had no basis to stop, question, arrest, or detain Ms. Pierre-Louis, and she never "flail[ed] her arms" or resisted arrest in any manner that could have caused Defendant Clarck any injuries.

4.      Nonetheless, Defendant Paljor later swore to and adopted Defendant Clarck's false description of events in the criminal complaint he signed charging Ms. Pierre-Louis with Obstructing Governmental Administration in the Second Degree and Resisting Arrest, even though Defendant Paljor also knew the information to be false because the entire event unfolded in his very presence.  This false information caused the Manhattan District Attorney's Office to pursue false charges against Ms. Pierre-Louis, which were ultimately dismissed months later.

5.      But the damage to Ms. Pierre-Louis had already been done.  Ms. Pierre-Louis was arrested in front of her young daughter and other members of her community, without any credible basis, and in a manner that still causes her ongoing pain to this day.  Moreover, the stress and anxiety of being wrongfully arrested (in the presence of her daughter) and detained overnight, as well as enduring a monthslong unlawful prosecution, was emotionally devastating.  And to make matters worse, even after the false charges against Ms. Pierre-Louis had already been dropped, Defendant Clarck continued to harass and taunt Ms. Pierre-Louis for the unlawful arrest and malicious prosecution he carried out against her.

6.      Ms. Pierre-Louis is by no means the only New Yorker to credibly accuse Defendant Clarck of misconduct.  Indeed, *Defendant Clarck has been the subject of no fewer than 12 complaints with the Civilian Complaint and Review Board ("CCRB")*, including substantiated

complaints that he has abused his authority and a finding that he had provided testimony inconsistent with body worn camera footage to the CCRB. Troublingly, the NYPD police commissioner disregarded the CCRB's recommendation to discipline Defendant Clarck and declined to impose any discipline at all. Indeed, Defendant Clarck has since been promoted.

7.     Ms. Pierre-Louis brings this case to hold Defendants Clarck and Paljor and the City of New York accountable for their unlawful and unconstitutional conduct.

## JURISDICTION, VENUE, AND NOTICE OF CLAIM

8.     This action arises under 42 U.S.C. § 1983, and jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343, and 1367.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in New York, New York.

10.     This action is timely because it was commenced within three years of the time that Ms. Pierre-Louis's federal and New York City claims accrued.

11.     On April 10, 2023, Ms. Pierre-Louis filed a Notice of Claim pursuant to New York General Municipal Law § 50-e concerning the allegations in this Complaint.

12.     On January 25, 2024, an examination of Ms. Pierre-Louis concerning her Notice of Claim was undertaken at the demand of the respondents pursuant to New York General Municipal Law § 50-h, to which Ms. Pierre-Louis fully complied.

## PARTIES

13.     **Plaintiff Alishia Pierre-Louis** is a resident of New York, New York.

14.     **Defendant City of New York ("City")**, of which New York County is a subdivision, is a municipal corporation of the State of New York and is a resident of the Southern District of New York. The NYPD is an agency of the City.

15.     **Defendant Erick Clarck** was at all relevant times an officer employed by the New York City Police Department.

16.     **Defendant Tashi Paljor** was at all relevant times an officer employed by the New York City Police Department.

## STATEMENT OF FACTS

### *Ms. Pierre-Louis Is Falsely Arrested and Unlawfully Detained by Defendants Clarck and Paljor in Front of her Child and her Community*

17.     At all relevant times, Ms. Pierre-Louis lived at 850 Columbus Avenue, New York, New York, 10025 an apartment building located in a New York City Housing Authority ("NYCHA") complex known as the Frederick Douglass Houses, with her mother and her young daughter.

18.     The Frederick Douglass Houses are patrolled by members of the Police Service Area 6 ("PSA 6").  PSA 6 works in 18 New York City Housing Authority developments within the confines of the 24th, 26th, and 32nd precincts.

19.     The Frederick Douglass Houses are located in the 24th precinct.

20.     Defendant Clarck was assigned to PSA 6 and worked in that unit during the relevant time period.

21.     Ms. Pierre-Louis previously complained about Defendant Clarck's conduct, including in or around September 2021 to the NYPD's Internal Affairs Bureau and again in or around September 2022.

22.     On the evening of September 30, 2022, Ms. Pierre-Louis and a group of her friends were in the parking lot of her home, the Frederick Douglass Houses.

23.     Ms. Pierre-Louis and her friends were hanging out, listening to music, and enjoying the nice weather.

24.     Ms. Pierre-Louis's daughter was playing in the park within the Frederick Douglass Houses courtyard, right next to the parking lot.

25.     Ms. Pierre-Louis had a cup filled with ice and juice that she had purchased from a nearby bodega.

26.     Defendant Clarck and his partner, Defendant Paljor, pulled into the parking lot in their NYPD patrol car.

27.     Ms. Pierre-Louis recognized Defendant Clarck as the officer against whom she had recently filed a complaint.

28.     Defendants Clarck and Paljor exited the patrol car at the same time.  Immediately upon exiting his patrol car, Defendant Clarck zeroed in on Ms. Pierre-Louis and, without any basis, asked her what kind of alcohol she had in her cup.

29.     There was no alcohol in Ms. Pierre-Louis's cup, nor was there any basis to believe there was any alcohol.

30.     Although there was no legal requirement that she answer, Ms. Pierre-Louis unequivocally stated that she had juice in her cup.

31.     Defendant Clarck did not accept Ms. Pierre-Louis's explanation and continued to insist that, "based on [his] training," Ms. Pierre-Louis had alcohol in her cup. He demanded that she show him her cup.

32.     At no point did Defendant Clarck report seeing any bottles of alcohol in the vicinity, nor did he report smelling liquor either in the cup or on Ms. Pierre-Louis.  Nothing about the cup that Ms. Pierre-Louis held indicated that it contained alcohol.  Ms. Pierre-Louis did not appear to be intoxicated, and she was not, in fact, drinking any alcohol.

33.     Regardless, when Ms. Pierre-Louis denied that there was alcohol in her cup and continued to tell Defendant Clarck that she had juice in her cup, Defendant Clarck demanded to see her identification.

34.     Defendant Clarck had no lawful basis to ask to see Ms. Pierre-Louis's identification because he had no objectively credible reason to approach her and request her identification.

35.     Ms. Pierre-Louis declined to show Defendant Clarck her identification.

36.     Ms. Pierre-Louis asked Defendant Clarck to call his sergeant.

37.     Defendant Clarck demanded, without legal basis, that Ms. Pierre-Louis give him the cup that she was holding, but Ms. Pierre-Louis declined.

38.     Without any lawful basis, Defendant Clarck then placed Ms. Pierre-Louis's left arm in a handcuff.  He then took her right arm, placed it behind her back, and cuffed both of her arms behind her back.

39.     Defendant Paljor assisted Defendant Clarck in handcuffing Ms. Pierre-Louis.

40.     At no point did Ms. Pierre-Louis flail her arms or make any sudden movements. Nor did she try to move away from the Defendants as they were arresting her.

41.     Ms. Pierre-Louis physically cooperated with Defendants Clarck and Paljor as they were arresting her.

42.     Ms. Pierre-Louis did not use any force against Defendants Clarck or Paljor during the arrest, nor did she use any threatening or intimidating words against them.

43.     Ms. Pierre-Louis repeatedly asked why she was under arrest, and she made it clear that Defendant Clarck had harassed her.

44.     Ms. Pierre Louis also repeatedly asked to speak to a sergeant.

45.     Nevertheless, Ms. Pierre-Louis stood still and did not resist arrest.

46.     The arrest was captured on video by several cell phones.

47.     After her arrest, Defendant Paljor collected Ms. Pierre-Louis's cup from her friend.

48.     Ms. Pierre-Louis never received a summons for an open container violation.

49.     After she was handcuffed, Defendants Clarck and Paljor drove Ms. Pierre-Louis to the precinct in their squad car.

50.     Ms. Pierre-Louis remained handcuffed throughout the drive.

51.     Ms. Pierre-Louis complained that her handcuffs were too tight.

52.     Ms. Pierre-Louis also complained that she was experiencing pain in her arm and shoulder.

53.     Neither officer took any steps to loosen her handcuffs or otherwise alleviate her pain.

54.     At the police precinct, Ms. Pierre-Louis complained that her arm and shoulder were hurting her.

55.     Ms. Pierre-Louis was processed and taken to a holding cell at the precinct.

56.     Ms. Pierre-Louis was incarcerated in the holding cell overnight.

57.     During the night, Defendant Clarck came to the holding cell and spoke with Ms. Pierre-Louis.

58.     Defendant Clarck claimed that Ms. Pierre-Louis had sprained his wrist, but he told Ms. Pierre-Louis that it "was not her fault."

59.     He also played Ms. Pierre-Louis an audio recording of a woman yelling, which he claimed was Ms. Pierre-Louis on a previous occasion.

### *After Defendants Clarck and Paljor Falsely Arrested Ms. Pierre-Louis, They Fabricated False Evidence Against Her and Maliciously Prosecuted Her*

60.     The following day, on October 1, 2022, Defendant Paljor signed the criminal complaint against Ms. Pierre-Louis.

61.     Defendant Paljor falsely stated that Ms. Pierre-Louis "intentionally attempted to prevent a police officer and peace officer from effecting an authorized arrest of himself and another person; the defendant intentionally prevented a public servant from performing an official function by intimidation, physical force and interference and by means of an independently unlawful act."

8

62.     As noted above, however, none of this was true, as the video clearly demonstrates.

63.     The complaint also falsely stated the following:

> I am informed by my partner, PO Erick Clarck, Shield # 13492, of Housing Bureau PSA 6 that he observed the defendant drinking alcohol in public at the above location.  When Defendant Clarck and I approached, I observed the defendant refuse to give any identification.

> When Officer Clarck and I attempted to place the defendant in handcuffs, the defendant flailed her arms around making it difficult to handcuff her.  I am informed by Officer Clarck that this caused Officer Clarck to suffer a sprain to his wrist and scratches to his hand from the handcuffs.

64.     Defendants Clarck and Paljor knew that these claims were false, and video footage of the incident leaves no doubt about the falsity of their claims.

65.     *First*, Defendant Clarck never "observ[ed] [Ms. Pierre-Louis] drinking alcohol in public."  As noted above, Ms. Pierre-Louis was not drinking alcohol and did not have alcohol in her cup.

66.     Rather, video footage of the arrest shows that as soon as Defendant Clarck exited his police car, he asked Ms. Pierre-Louis what kind of alcohol she had in her cup, and Ms. Pierre-Louis repeatedly stated that she had juice in her cup.

67.     According to the criminal court complaint, Defendant Clarck at some point falsely stated to Defendant Paljor that he had observed Ms. Pierre-Louis drinking alcohol.

68.     But Defendant Paljor knew that Defendant Clarck had not, in fact, observed Ms. Pierre-Louis drinking alcohol.

69.     As noted above, Defendant Paljor collected Ms. Pierre-Louis's cup after her arrest and there was no evidence that it ever had alcohol in it.

70.     Ms. Pierre-Louis was never cited with having an open container of alcohol.

71.     Moreover, Defendant Paljor exited the police car at the same time Defendant Clarck

exited the police car, and thus, he had the same opportunity to observe Ms. Pierre-Louis as Defendant Clarck did.

72.    Defendant Paljor, however, did not aver in the criminal complaint that he had personally observed Ms. Pierre-Louis drinking alcohol, but only that he was "informed" of this by Defendant Clarck.

73.    *Second*, as demonstrated in the video footage, Ms. Pierre-Louis did not "flail[] her arms around" or take any actions to make it "difficult to handcuff her," which "caus[ed] Defendant Clarck to suffer a sprain to his wrist and scratches to his hand from the handcuffs."

74.    The video footage shows that Ms. Pierre-Louis stood still and kept her arms still as the officers arrested her.

75.    Ms. Pierre-Louis did not make any sudden movements, or in any way resist the arrest, such that she could have caused any injuries to Defendant Clarck.

76.    Moreover, the video footage captures both Defendant Clarck's wrists and hands. At no point is Defendant Clarck's wrist twisted, overextended, or impacted in any way. Ms. Pierre-Louis never comes into contact with his wrists.

77.    As captured by the video, the handcuffs never scratch Defendant Clarck in any way.

78.    There were no scratches on Defendant Clarck's hands after Ms. Pierre-Louis had been handcuffed.

79.    During the arrest, Defendant Clarck does not indicate any sense of pain, either by wincing, pulling away, or otherwise indicating that he had been injured at all.

80.    But even if Defendant Clarck's wrist or hand had somehow been injured during Ms. Pierre-Louis's arrest (which it was not), Defendant Clarck told Ms. Pierre-Louis that his wrist injury was "not her fault" at the precinct.

81.     Nonetheless, based on this false information, Ms. Pierre-Louis was prosecuted by the Manhattan District Attorney's Office.

82.     On October 1, 2022, Ms. Pierre-Louis was transported to Central Booking.

83.     Ms. Pierre-Louis spent approximately 12 hours in custody before her transport to Central Booking.

84.     Ms. Pierre-Louis was then held in Central Booking until her court appearance, where she appeared before a judge with appointed counsel.

85.     At this appearance, Ms. Pierre-Louis learned for the first time that she was being charged with Obstruction of Governmental Administration in the Second Degree and Resisting Arrest.

86.     At her arraignment, the judge released Ms. Pierre-Louis on her own recognizance and scheduled an appearance for November 15.

87.     Ms. Pierre-Louis was finally able to return home in the evening on October 1, 2022.

88.     Following her arraignment, Ms. Pierre-Louis attended at least two subsequent court appearances in connection with these false charges.

89.     No testimony or evidence was ever presented against Ms. Pierre-Louis.

90.     On information and belief, Defendant Clarck never signed a supporting deposition, swearing to the false information he provided Defendant Paljor that formed the basis for the criminal complaint.

91.     On January 10, 2023, both charges were dismissed.

***Ms. Pierre-Louis Suffers Additional Physical Injury Due to her Unlawful Arrest and the Defendants' Excessive Force, as well as Emotional Trauma Resulting from this Incident***

92.     After her arrest, handcuffing, and incarceration, Ms. Pierre-Louis felt severe pain in her shoulder.

11

93.     At the time of her arrest, Ms. Pierre-Louis had been receiving treatment for an injury to her shoulder caused by an accident in 2021.

94.     During the arrest, Ms. Pierre-Louis felt as though something had torn in her left shoulder.

95.     In the months following the arrest, Ms. Pierre-Louis required additional medical interventions to manage the exacerbation of pain caused by the arrest.

96.     She had to visit her chiropractor more frequently and spent longer sessions working on her arm and shoulder than she had to before the arrest.

97.     She also visited a neurologist to treat her pain.

98.     Despite these additional measures, the pain in her shoulder persisted.

99.     To this day, Ms. Pierre-Louis continues to feel pain in her shoulder, which significantly limits her mobility.

100.    Certain activities have become even more difficult for Ms. Pierre-Louis since the arrest.

101.    Ms. Pierre-Louis has also suffered emotionally as a result of this incident.

102.    Ms. Pierre-Louis's arrest was acutely emotionally devastating for her: she experienced fear, anxiety, and stress during her unlawful arrest and detention, and she was incredibly distressed that her young daughter witnessed the entire incident.

103.    During her unlawful detention, Ms. Pierre-Louis could not stop worrying that her daughter was alone, scared, and confused after watching her arrest.

104.    Ms. Pierre-Louis also experienced tremendous stress and anxiety as the unlawful prosecution against her was pending for months.

105.    Ms. Pierre-Louis also had to live with the humiliation of having been arrested in

front of other members of her community, which she felt tarnished her reputation.

106.    Despite what Defendant Clarck had already subjected Ms. Pierre-Louis to, he continued to harass and taunt her, even after the false charges against her had already been dropped. For example, on July 4, 2023, Ms. Pierre-Louis attended a barbecue party hosted by someone in the Frederick Douglass Houses.  While on patrol of the area, Defendant Clarck stopped by the barbecue.  Defendant Clarck took steps to humiliate Ms. Pierre-Louis and told the other attendees: "don't be like Alishia and get locked up."

107.    On information and belief, Defendants Clarck and Paljor have not received any discipline, including formal training or instructions, for their unlawful arrest of Ms. Pierre-Louis or their false statements used to justify the arrest and initiate an unlawful prosecution against her.

***Defendant Clarck Has a History of Abusing his Authority and Lying About It***

108.    Defendant Clarck's unlawful and egregious conduct against Ms. Pierre-Louis is consistent with his history of abusing his authority and lying about it, which the NYPD was well-aware of at the time Defendant Clarck unlawfully arrested, detained, and maliciously prosecuted Ms. Pierre-Louis.

109.    Defendant Clarck has received no fewer than twelve complaints to the Civilian Complaint Review Board (the "CCRB") alleging at least twenty-seven instances of misconduct.

110.    On August 8, 2022, the CCRB substantiated a claim that Defendant Clarck had abused his authority.

111.    The August 8, 2022 finding stemmed from a May 2021 traffic stop.

112.    During the May 2021 traffic stop, Defendant Clarck told a bystander that he was interfering with his investigation and that "if you don't want to be in cuffs, just do me a favor and be quiet."

113.    Defendant Clarck testified to the CCRB that the bystander was cursing at him and trying to distract him.

114.    The CCRB found that Defendant Clarck's testimony was contradicted by the body-worn camera footage taken by other responding officers, which did not show the bystander cursing at Defendant Clarck or intentionally obstructing any of Defendant Clarck's duties.

115.    On information and belief, Defendant Clarck did not receive any discipline as a result of the May 2021 incident or for lying in his testimony to the CCRB, including formal training and instructions, between the May 2021 incident and August 8, 2022.

116.    After the May 2021 incident, Defendant Clarck continued his police duties in PSA 6.

117.    The CCRB recommended a penalty consistent with Command Discipline B.

118.    Command Discipline B may result in punishments up to the loss of ten vacation days.

119.    Nevertheless, on November 7, 2022, the NYPD Commissioner declined to impose any penalty on Defendant Clarck, notwithstanding the CCRB's finding that Defendant Clarck had abused his authority by wrongfully threatening arrest and then lied about the circumstances of that threat under oath to the CCRB.

120.    On information and belief, Defendant Clarck never received any discipline, including formal training or instructions, for the May 2021 incident or for his false testimony to the CCRB.

121.    On information and belief, Defendant Clarck's police duties were not modified in any way after he was accused of abuse of authority and threatening an unlawful arrest.

122.    On information and belief, Defendant Clarck's police duties were not modified in

any way after the CCRB substantiated the May 2021 complaint against him and found that he had given false testimony.

123.    On information and belief, on other occasions, the NYPD has declined to impose discipline on Defendant Clarck for abusing his authority and wrongfully threatening to arrest a civilian without any basis.

124.    Indeed, on or around 2024, Defendant Clarck was promoted to Detective.

## CAUSES OF ACTION
### COUNT I
**False Arrest Pursuant to 42 U.S.C. § 1983**
**(Defendants Clarck and Paljor)**

125.    Plaintiff repeats each allegation above as if set forth herein.

126.    Defendants Clarck and Paljor intentionally arrested Ms. Pierre-Louis.

127.    Ms. Pierre-Louis was aware of this confinement.

128.    Ms. Pierre-Louis did not consent to this confinement.

129.    Defendants Clarck and Paljor were not privileged to arrest Ms. Pierre-Louis inasmuch as they lacked a warrant and probable cause to believe that Ms. Pierre-Louis had committed a crime.

130.    Defendants Clarck and Paljor are therefore liable to Ms. Pierre-Louis, under 42 U.S.C. §§ 1983 and 1988, for all the reasonably foreseeable injuries that their unlawful conduct caused and for her attorneys' fees, costs, and expenses.

### COUNT II
**42 U.S.C. § 1983 Claim for Malicious Prosecution**
**(Defendants Clarck and Paljor)**

131.    Plaintiff repeats each allegation above as if set forth herein.

132.    Defendants Clarck and Paljor, by their foregoing conduct in initiating Ms. Pierre-Louis's criminal prosecution without probable cause, caused Ms. Pierre-Louis to be deprived of

her liberty.

133.    In doing so, they are liable to Ms. Pierre-Louis for their violation of her federal constitutional right to be free of unlawful detention and malicious prosecution pursuant to 42 U.S.C. § 1983 and to the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

134.    Defendants Clarck and Paljor each deliberately, willfully, recklessly, maliciously, and/or with deliberate indifference to the truth initiated a criminal proceeding against Ms. Pierre-Louis, without probable cause, in that they falsely arrested her and drafted a charging instrument that falsely accused her of crimes, and forwarded that false instrument to the Manhattan District Attorney's Office.

135.    The charges against Ms. Pierre-Louis were dismissed in January of 2023 without any conviction.

136.    The defendants are therefore liable to Ms. Pierre-Louis, under 42 U.S.C. §§ 1983 and 1988, for all the reasonably foreseeable injuries that their unlawful conduct caused and for her attorneys' fees, costs, and expenses.

## **COUNT III**

**42 U.S.C. § 1983 Claim for Unreasonable Use of Force Under the Fourth Amendment**
**(Defendants Clarck and Paljor)**

137.    Plaintiff repeats each allegation above as if set forth herein.

138.    Defendant Clarck pulled Ms. Pierre-Louis's hands behind her back and handcuffed her too tightly even though she was not resisting arrest.

139.    At the time of her arrest, Ms. Pierre-Louis was not committing any crime, and she did not pose any threat to the safety of the arresting officers or others.

140.    Defendant Paljor observed Defendant Clarck roughly handcuffing Ms. Pierre-Louis and did not intervene.  Rather, he participated in the handcuffing.

16

141.    Ms. Pierre-Louis repeatedly complained to Defendants Clarck and Paljor that the handcuffs were unreasonably tight and causing pain.

142.    Ms. Pierre-Louis repeatedly complained that the position of her arm and shoulder was causing her pain.

143.    Yet no officer took any action to loosen or remove Ms. Pierre-Louis's handcuffs until she arrived at the police precinct.

144.    As a result of the handcuffs being too tight and the improper positioning of her arms, Ms. Pierre-Louis suffered an exacerbation of her shoulder injury that caused her great pain.

145.    Ms. Pierre-Louis still experiences pain and has a limited capability for motion and activity that is caused by the excessive force.

146.    Defendants Clarck and Paljor are therefore liable to Ms. Pierre-Louis, under 42 U.S.C. §§ 1983 and 1988, for all the reasonably foreseeable injuries that their unreasonable use of force and/or failure to intervene caused and for her attorneys' fees, costs, and expenses.

## <u>COUNT IV</u>

**42 U.S.C. § 1983; Denial of Liberty, Due Process, and a Fair Trial Under the Fourth, Fifth, Sixth, and Fourteenth Amendments**
**(Defendants Clarck and Paljor)**

147.    Plaintiff repeats and realleges each allegation above as if set forth herein.

148.    Defendants Clarck and Paljor, individually, acting in concert, and/or aiding and abetting one another, deliberately, willfully, recklessly, and/or with deliberate indifference to the truth, manufactured false evidence against Plaintiff, including the allegations that Defendant Clarck had seen Ms. Pierre-Louis drinking alcohol, that she had flailed her arms and made it difficult for Defendants to handcuff her, and that she had injured Defendant Clarck, and caused such false allegations to be documented in a sworn Criminal Court complaint.

149.    The false evidence was material to Plaintiff's prosecution for obstruction of

17

governmental administration in the second degree and resisting arrest in that it was the only evidence of guilt against Plaintiff.

150.    Defendants Clarck and Paljor forwarded, caused to be forwarded, or aided and abetted the forwarding of false evidence to the Manhattan District Attorney's Office.

151.    Defendants Clarck and Paljor knew that the evidence they had fabricated and caused to be transmitted to the District Attorney's Office was likely to influence the decision by prosecutors whether to prosecute Ms. Pierre-Louis, the decision by the court concerning whether and on what conditions to release her on bail, and the decision by a jury about whether to convict her.

152.    In fact, the fabricated evidence was a substantial and proximate cause of Ms. Pierre-Louis's deprivation of liberty and other injuries, including but not limited to her prosecution and subsequent court appearances.

153.    Defendants Clarck and Paljor are therefore liable to Ms. Pierre-Louis, under 42 U.S.C. §§ 1983 and 1988, for all the reasonably foreseeable injuries that their unlawful conduct caused and for Plaintiff's attorney's fees, costs, and expenses.

### COUNT V
### N.Y.C. Admin. Code §§ 8-802, 803
### (All Defendants)

154.    Plaintiff repeats and realleges each allegation above as if set forth herein.

155.    Pursuant to N.Y.C. Admin. Code §§ 8-802, 803, the Defendants and their employer, the City of New York, are liable for their aforementioned violations of Ms. Pierre-Louis's rights, including for false arrest, malicious prosecution, excessive force, and evidence fabrication, for her actual damages, and for punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and demands judgment in her favor on each of her claims against Defendants as follows:

(a) Declaring and adjudging that Defendants' acts alleged herein violated Plaintiff's rights under the Constitution, the laws of the United States, and/or the laws of the City of New York;

(b) Entering judgment in favor of Plaintiff and order that Plaintiff shall recover (i) compensatory damages against each of the Defendants, jointly and severally, to compensate Plaintiff for her past, present, and future pain, suffering, and other hardships arising from the Defendants' conduct, and (ii) punitive damages against each of the Defendants pursuant to 42 U.S.C. § 1983 and/or the laws of the City of New York;

(c) Entering injunctive relief sufficient to deter unconstitutional conduct by Defendants;

(d) Awarding Plaintiff the costs of the suit herein, including but not limited to attorney's fees pursuant to 42 U.S.C. § 1988, N.Y.C. Admin. Code § 8-805, and the inherent powers of the Court;

(e) Awarding pre-judgment interest as allowed by law; and

(f) Granting such other and further relief as the Court deems just and proper.

By:

_____
Michael L. Bloch

_____
Cristina Alvarez

BLOCH & WHITE LLP
Michael L. Bloch, Esq.
Cristina Alvarez, Esq.
90 Broad Street, Suite 703
New York, New York 10004
(212) 901-3820
mbloch@blochwhite.com
calvarez@blochwhite.com

*Attorneys for Plaintiff*

20